**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PEDRO ROMERO TALAVERA; ARELIS DEL SOCORRO VÁSQUEZ TÁMARA, his wife; THE CONJUGAL PARTNERSHIP formed between them**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CUSTOMS AND BORDER PROTECTION AGENCY - DEPARTMENT OF HOMELAND SECURITY, UNITED STATES OF AMERICA**<br><br>*Defendant.* | CIVIL NO.:<br><br>Re: FTCA, 28 U.S.C. §§ 1346(b), 2671–2680 |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Pedro Romero Talavera; Arelis del Socorro Vásquez Támara, his wife; and the Conjugal Partnership formed between them (collectively, "Plaintiffs"), by and through their undersigned counsel, and respectfully file this Complaint against the United States of America, as follows:

## INTRODUCTION

Pedro Romero served as an Aviation Mechanic at a federal facility in Aguadilla, Puerto Rico, for over twenty years. He also served as the Chief Steward of his union, the International Association of Machinists and

1

Aerospace Workers, representing his fellow workers in grievances and collective bargaining disputes. On March 9, 2022, a DHS official revoked Mr. Romero's facility access credentials on the spot—without written notice, without an investigation, without a statement of reasons, and without any opportunity to respond. Federal law required all of these protections. None were provided.

**The revocation was immediate and permanent. Mr. Romero's own employer, Amentum, conducted an internal investigation, interviewed nine employees, and found no wrongdoing whatsoever. Even the employee who had filed the complaint confirmed he was never afraid for his safety. The union demanded reconsideration. Amentum's senior management requested reinstatement. DHS refused, without explanation, and has never provided one.**

The Office of Personnel Management's Credentialing Standards Procedures, issued pursuant to Homeland Security Presidential Directive 12 and binding on all executive departments and agencies, prescribe mandatory steps that must precede any revocation of facility access credentials: a written explanation, notice of the individual's rights, and a thirty-day period to present evidence. DHS's own internal instructions impose additional requirements, including a written Notice of Determination, the right to counsel, and access to the records underlying the decision. Defendant's employees did not exercise discretion within these procedures—they bypassed every one of them.

Mr. Romero has been diagnosed with Post-Traumatic Stress Disorder. He has not worked since March 9, 2022, and is permanently unable to return to

his career. This action seeks compensatory damages for the injuries caused by the Government's failure to follow its own mandatory procedures.

## JURISDICTION AND VENUE

3. Plaintiff filed an administrative claim by submitting a Standard Form 95 ("SF-95") to the Department of Homeland Security on August 8, 2022, seeking damages in the amount of $100,000.00. Pursuant to 28 U.S.C. § 2675(a), more than six months have elapsed without a final disposition by the agency. Under the FTCA, this inaction constitutes a deemed final denial of the claim at the option of the claimant, authorizing Plaintiff to proceed in this Court. No formal denial letter was issued by DHS at any time.

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1346(b)(1), which grants the district courts exclusive jurisdiction over civil actions against the United States for money damages for injury caused by the negligent or wrongful acts or omissions of Government employees acting within the scope of their employment, under circumstances where a private person would be liable under the law of the place where the act or omission occurred.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1402(b) because the acts and omissions giving rise to this claim occurred in Aguadilla, Puerto Rico.

6. Sovereign immunity does not bar this action. The FTCA expressly waives the sovereign immunity of the United States for claims arising from negligent

3

or wrongful acts by federal employees acting within the scope of their duties. 28 U.S.C. § 1346(b)(1).

7. The discretionary function exception, 28 U.S.C. § 2680(a), does not apply because Plaintiff's claims arise from DHS employees' failure to comply with specific, mandatory, non-discretionary procedural requirements that admit of no element of judgment or choice. The Office of Personnel Management's Credentialing Standards Procedures (December 15, 2020), issued pursuant to Homeland Security Presidential Directive 12 ("HSPD-12") and binding on all executive departments and agencies, prescribe mandatory procedural steps for the revocation of PIV credentials using unambiguous "must" language. Under *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, "the employee has no rightful option but to adhere to the directive," and the discretionary function exception does not apply.

8. Even assuming *arguendo* that the challenged conduct involved an element of judgment, the discretionary function exception would still not apply because the conduct was not susceptible to policy analysis. Under *United States v. Gaubert*, 499 U.S. 315, 325 (1991), when discretion exists, it must be presumed that the agent's acts are grounded in the policy of the regulatory regime. However, this presumption is rebuttable where the plaintiff alleges facts showing the challenged conduct was not the kind of decision the exception was designed to shield. Here, the total failure to

follow any procedural step—not a selective exercise of judgment within the procedures, but a wholesale bypass of all of them—in the specific context of escalating labor disputes between Plaintiff and DHS management demonstrates that the challenged conduct was not grounded in policy considerations susceptible to protection under the exception. See *Gaubert*, 499 U.S. at 325.

## PARTIES

9. Plaintiff Pedro Romero ("Plaintiff Romero") is a citizen and resident of Puerto Rico, with postal address at 128 Calle Belt, Aguadilla, Puerto Rico 00603, and physical address at Carr. 125 Km. 12.1, Barrio Capa, Sector Figueroa, Moca, Puerto Rico 00676, who was employed as an aviation mechanic by Amentum DynCorp International ("Amentum"), a private government contractor, and assigned to the Caribbean Air and Marine Branch ("CAMB") in Aguadilla, Puerto Rico. (Exhibit A, p. 2.) Plaintiff was at all relevant times an employee of Amentum, a private corporation, and was not a federal employee, a civil service employee, or a member of the uniformed services. The Civil Service Reform Act, 5 U.S.C. §§ 1101 et seq., and its exclusive remedial scheme for federal personnel actions do not apply to Plaintiff. Plaintiff's physical address is as stated above.

10. Plaintiff Arelis del Socorro Vásquez Támara ("Plaintiff Vásquez") is the wife of Plaintiff Romero and a citizen and resident of Puerto Rico, residing at the same postal and physical addresses as Plaintiff Romero. Plaintiff Vásquez brings this action in her own right for the severe emotional

5

distress, mental anguish, and loss of consortium she has suffered as a direct and foreseeable result of the injuries inflicted upon her husband by Defendant's negligent conduct.

11. The Conjugal Partnership formed between Pedro Romero Talavera and Arelis del Socorro Vásquez Támara under the laws of Puerto Rico (the "Conjugal Partnership") is a co-plaintiff herein, with the same postal and physical addresses as Plaintiff Romero. Under Puerto Rico law, earnings from employment during marriage constitute community property of the conjugal partnership. P.R. Laws Ann. tit. 31, § 9811. The lost wages and economic damages alleged herein are property of the Conjugal Partnership.

12. Defendant is the U.S. Customs and Border Protection Agency, and the United States of America, sued herein pursuant to 28 U.S.C. § 1346(b)(1), acting by and through its agency, the U.S. Customs and Border Protection, a component of the U.S. Department of Homeland Security.

13. At all relevant times, the following were employees of DHS, CBP, Air and Marine Operations, and acted within the scope of their employment:

    a. Augusto Reyes served as Director of Air & Marine Operations at CAMB from approximately January 2022 to July 2024. (Exhibit B, p. 5.)

b. Ivan Cestero served as a Regional Aviation Maintenance Officer and previously as a Program Manager at CBP from approximately December 1999 to April 2022.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Union Activity

14. Plaintiff was an aviation mechanic employed by Amentum, a private government contractor, and assigned to CAMB in Aguadilla, Puerto Rico. (Exhibit A, p. 2.) During his employment, Plaintiff held a Secret security clearance.

15. **Beyond his duties as a mechanic, Plaintiff served as the Chief Steward of the International Association of Machinists and Aerospace Workers ("IAMAW") at CAMB, representing aviation workers in labor disputes, grievances, and collective bargaining matters. (Exhibit C, p. 2.)**

16. In December 2021, Plaintiff and other shop stewards investigated misapplications of the collective bargaining agreement between Amentum and the IAMAW, including underpayment of an employee for work performed out of class. (Exhibit D, p. 1.) The employee whose CBA violations were being investigated, Kenneth Acevedo, filed complaints against the shop stewards in response. On December 13, 2021, Amentum convened a meeting at CAMB to address Acevedo's complaints; a related grievance was filed with the Union and resolved in February 2022. (Exhibit B, pp. 2–3.) Acevedo's complaints subsequently became

the stated basis for DHS's revocation of Plaintiff's credentials. (Exhibit D, p. 1.)

17. In his capacity as Chief Steward, Plaintiff filed grievances directly challenging DHS and Amentum management practices, placed himself in opposition to supervisory personnel on matters of working conditions and safety, and served as the primary point of contact between the unionized workforce and management at CAMB.

### B. The Credential Revocation

18. On March 9, 2022, without any prior warning, written notice, investigation, opportunity for defense, or compliance with any of the mandatory procedural requirements detailed below, <u>DHS official Augusto Reyes revoked Plaintiff's CAMB access credentials, effectively and immediately terminating his ability to perform his work and forcing him to vacate the premise</u>s. (Exhibit B, p. 5; Exhibit C, p. 2.)

19. No formal misconduct investigation was conducted. No written charges or statement of reasons were presented. No Notice of Determination was issued. No opportunity to respond, either orally or in writing, was afforded to Plaintiff prior to or after the revocation. (Exhibit D, p. 2.)

20. **Amentum, Plaintiff's direct employer, promptly conducted an internal review which cleared Plaintiff of any wrongdoing, concluding there was no basis for any security concern or disciplinary action. (Exhibit D, p. 2.)**

21. **Despite being cleared by his employer, DHS refused to restore Plaintiff's credentials, ignoring multiple appeals from Amentum executives and IAMAW union officials demanding his reinstatement. (Exhibit B)**

22. The revocation was not accompanied by any certification from the DHS Secretary or agency head that the mandatory procedural protections could not be followed without damage to national security—the sole basis under OPM's credentialing framework for bypassing mandatory procedures.

23. **Had DHS followed the mandatory procedures detailed below, Plaintiff would have received written notice of the basis for the revocation and a thirty-day opportunity to respond by presenting information and documentation—including Amentum's own exoneration, the IAMAW's formal objections, and any additional evidence—that would have refuted or alleviated the concerns underlying the revocation.**

24. **The mandatory procedures exist precisely because they may change outcomes, and Plaintiff was denied any opportunity to invoke them.**

25. **Proper review would have produced a materially different result as is demonstrated by the fact that when Amentum conducted its own internal review of the same underlying facts, it cleared Plaintiff entirely, finding no basis for any security concern or disciplinary action. (Exhibit D, p. 2.)**

### C. Context of the Procedural Failures

26. The total absence of any procedural compliance by DHS officials did not reflect an exercise of policy judgment. Rather, it occurred in the specific context of escalating disputes between Plaintiff—in his capacity as Chief Steward—and DHS management at CAMB over working conditions, safety, and labor grievances. This context is relevant to establishing that the failure to follow mandatory procedures was not grounded in considerations of public policy susceptible to protection under the discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315, 325 (1991) (holding that discretionary conduct must be susceptible to policy analysis to receive protection); see also *King v. Higgins*, 702 F.2d 18, 21 (1st Cir. 1983) (holding that the existence of departmental regulations prescribing procedural protections rebuts any claim that the official acted in good faith in denying those protections).

27. The credential revocation effectively terminated Plaintiff's employment, as he could not access CAMB to perform his duties. As Chief Steward, Plaintiff had been the principal union representative for the aviation workers at the facility; his removal eliminated the individual responsible for filing grievances and representing employees in disputes with management. The IAMAW subsequently reported that other shop stewards at CAMB feared they would be similarly targeted if they continued to enforce the collective bargaining agreement. (Exhibit C, pp. 2, 4.)

### D. Injuries and Damages

28. As a direct and foreseeable result of DHS's negligent failure to follow mandatory credentialing procedures, Plaintiff has suffered and continues to suffer the following independent, cognizable injuries:

    a. Loss of income and employment benefits from the date of the immediate, unannounced revocation on March 9, 2022;

    b. Irreparable harm to his professional reputation;

    c. Severe emotional distress, mental anguish, and related suffering caused by the arbitrary and unexplained manner of the credential revocation, including the humiliation of being stripped of his credentials without warning or explanation in the presence of colleagues he represented as union steward;

    d. A clinical diagnosis of V62.29—Employment Related Problems and F43.10—Post-Traumatic Stress Disorder (PTSD), as established by a psychological evaluation conducted by Yazmín Ríos-Rodríguez, Psy.D. (Exhibit E), directly attributable to the manner in which the credential revocation was carried out; and

    e. Loss of a meaningful opportunity to contest the revocation through the mandatory procedural protections established by HSPD-12, OPM, and DHS regulations, which would have afforded Plaintiff written notice, an explanation, access to the underlying records, a right to counsel, and a thirty-day period to present evidence—including Amentum's own internal exoneration—before any final determination was made.

11

29. The procedural failures themselves caused Plaintiff concrete harm: they converted what should have been a deliberate, multi-week adjudicative process with safeguards into an instantaneous and unexplained termination of his livelihood. Under Puerto Rico law, moral damages (daños morales) are compensable for the manner in which harm is inflicted, independent of the underlying outcome, and emotional distress is recoverable without any requirement of physical manifestation. P.R. Laws Ann. tit. 31, § 10801.

30. Plaintiff's compensatory damages are computed as follows: (a) Net lost earnings in the amount of $896,710.07, representing Plaintiff's lost wages from March 9, 2022, through his projected retirement at age 67 on February 20, 2036, calculated at his hourly rate of $35.71 for 2,080 annual hours as established by the Collective Bargaining Agreement, escalated annually per the CBA's scheduled wage increases and projected at 3% per annum thereafter, and offset by $2,600.00 per month in disability payments Plaintiff currently receives; (b) $500,000.00 in emotional distress, mental anguish, and moral damages arising from the diagnosed PTSD and the manner of the credential revocation as described herein; (c) loss of pension fund contributions and benefits in the amount of $50,000.00, or such greater amount as may be determined at trial; and (d) $100,000.00 in emotional distress, mental anguish, and moral damages suffered by Plaintiff Vásquez as a direct and foreseeable result of her husband's wrongful termination and

resulting permanent disability. Plaintiffs' total compensatory damages are $1,546,710.07, exclusive of any additional pension losses determined at trial.

31. The administrative claim presented to DHS sought $100,000.00 because it was filed on August 8, 2022, approximately five months after the credential revocation, before the full extent of Plaintiff's injuries had materialized. The increased amount sought herein is based upon intervening facts not reasonably discoverable at the time of presentment, within the meaning of 28 U.S.C. § 2675(b), including: (a) the subsequent clinical diagnosis of Post-Traumatic Stress Disorder (PTSD), which has rendered Plaintiff permanently disabled and unable to work as an aviation mechanic or in any comparable capacity for the remainder of his life; (b) the permanent foreclosure of Plaintiff's career in a specialized field requiring federal facility access credentials that have not been restored; (c) at the time the administrative claim was presented, Amentum and the IAMAW were actively pursuing reinstatement of Plaintiff's credentials through direct appeals to DHS officials, none of which had received a substantive response, such that the permanent failure of reinstatement efforts had not yet been established; and (d) the continued accrual of lost wages, benefits, and earning capacity over the four years since the revocation, the full magnitude of which was not ascertainable at the time the administrative claim was presented.

### E. Administrative Exhaustion

32. Plaintiff filed an administrative claim by submitting a Standard Form 95 (SF-95) to the Department of Homeland Security on August 8, 2022, seeking damages in the sum of $100,000. Pursuant to 28 U.S.C. § 2675(a), more than six months have elapsed without a final disposition by the agency. DHS never issued a formal denial letter or any written communication regarding the disposition of Plaintiff's administrative claim. Under the FTCA, this inaction is deemed a final denial at the option of the claimant, authorizing Plaintiff to proceed in this Court.

33. On May 1, 2023, Lisa Zito, Staff Attorney at the Office of the Associate Chief Counsel for U.S. Customs and Border Protection, confirmed in writing that DHS had received Plaintiff's administrative claim and that the two-year statute of limitations requirement under the FTCA had been satisfied as of the date the claim was filed with the Agency. (Exhibit F.) Despite this acknowledgment, DHS has never issued a formal disposition of the claim.

### **CAUSE OF ACTION**

### **Count I: Negligence Under the Federal Tort Claims Act**
### **(Violation of Mandatory Credentialing Procedures)**

34. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

35. Under the FTCA, the United States is liable for injury caused by the negligent or wrongful act or omission of any employee of the Government acting within the scope of his employment, "under circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The law of the place is Puerto Rico.

36. Under Puerto Rico law, Article 1536 of the Civil Code, P.R. Laws Ann. tit. 31, § 10801 (formerly Article 1802), provides that a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. To state a claim under this provision, a plaintiff must establish: (1) an injury, whether physical or emotional; (2) a negligent or intentional act or omission; and (3) a sufficient causal nexus between the act or omission and the injury. *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007).

### *Duty*

37. Defendant's employees owed Plaintiff a duty of care to comply with specific, mandatory, non-discretionary credentialing procedures when revoking his PIV access credentials. The principal source of these mandatory duties is the **OPM Credentialing Standards Procedures (December 15, 2020)**, issued pursuant to HSPD-12 and binding on all executive departments and agencies, which prescribes specific procedural steps using mandatory "must" language that admits of no element of judgment or choice. These procedures are further implemented and reinforced by the following authorities:

a. **OPM Credentialing Standards Procedures for Issuing Personal Identity Verification Cards under HSPD-12 (December 15,**

**2020).** This memorandum, issued by OPM in its capacity as Suitability and Credentialing Executive Agent, establishes binding credentialing standards applicable to all executive departments and agencies. For unfavorable credentialing determinations, the procedures mandate that agencies *must*: (i) furnish the individual a comprehensive written explanation of the basis for the denial or revocation of PIV eligibility, to the extent permitted by national security interests and applicable law; and (ii) afford the individual a response opportunity, oral or written, and thirty (30) days to provide information or documentation that may refute or alleviate the concerns. These requirements use mandatory "must" language and prescribe a specific course of action that admits of no element of judgment or choice, removing the challenged conduct from the discretionary function exception under *Berkovitz*, 486 U.S. at 536.

b. **Homeland Security Presidential Directive 12 (HSPD-12), Paragraph 6**, which mandates that credentialing actions "shall be implemented in a manner consistent with the Constitution and applicable laws, including the Privacy Act (5 U.S.C. 552a) and other statutes protecting the rights of Americans."

c. **Office of Management and Budget Memorandum M-05-24, Section 6.F**, which requires federal agencies to "[d]evelop, implement and post" appeal procedures "for those denied identification or whose identification credentials are revoked," including complaint

16

procedures and sanctions for employees violating agency privacy policies.

d. **DHS Personnel Security Instruction 121-01-007, Chapter 6**, which implements the foregoing authorities within DHS and requires that individuals receive: (i) a written Notice of Access Suspension including a brief statement of the reasons for the decision; (ii) revocation based on the Adjudicative Guidelines; (iii) a written Notice of Determination ("NOD") that must include a written explanation for the decision, the name and address of the Reviewing Official, notice of the individual's right to counsel, instructions on how to request the documents, records, or reports upon which the decision was based within fifteen (15) calendar days, and notice of the right to submit a written reply and/or request a personal appearance before the Reviewing Official within thirty (30) calendar days.

### *Breach*

38. Defendant's employees breached every one of these mandatory duties. Specifically, Augusto Reyes and other DHS employees:

a. Revoked Plaintiff's PIV access credentials without conducting any investigation;

b. Failed to provide any written notice of the basis for the revocation;

c. Failed to issue a Notice of Determination as required by DHS Instruction 121-01-007, Chapter 6;

17

d. Failed to inform Plaintiff of his right to counsel;

e. Failed to provide Plaintiff instructions on how to request the records and reports underlying the decision within fifteen (15) calendar days;

f. Failed to afford Plaintiff any opportunity to submit a written reply or to request a personal appearance before a Reviewing Official within thirty (30) calendar days;

g. Failed to document any factual basis for the revocation consistent with the Adjudicative Guidelines; and

h. Failed to obtain any certification from the DHS Secretary or agency head that mandatory procedures could not be followed without damage to national security.

39. These failures constituted a wholesale disregard of every mandatory procedural safeguard established by the OPM Credentialing Standards Procedures, HSPD-12, OMB M-05-24, and DHS's own internal instructions. The conduct of Defendant's employees was not an exercise of discretionary judgment but a complete failure to perform non-discretionary duties prescribed by binding federal directives. Under *Berkovitz*, 486 U.S. at 536, where the employee "has no rightful option but to adhere to the directive," the discretionary function exception is inapplicable. The existence of these mandatory procedural requirements independently establishes that Defendant's employees knew or should have known of their obligations. *Cf. King v. Higgins*, 702 F.2d 18, 21 (1st

18

Cir. 1983) (holding that the existence of departmental regulations prescribing procedural protections rebuts any claim that the official acted in good faith in denying those protections).

### *Causation and Damages*

40. As a direct and foreseeable result of Defendant's negligent failure to comply with mandatory credentialing procedures, Plaintiff's credentials were revoked instantaneously and without explanation, denying him any opportunity to contest or mitigate the action and effectively terminating his employment.

41. Defendant's procedural negligence caused Plaintiff independent, cognizable harm. The OPM Credentialing Standards Procedures required, at minimum, a written explanation, notice of rights, and a thirty-day response period before any final determination. By disregarding every one of these requirements, Defendant's employees caused the following harms:

   a. **Economic damages.** Compliant procedures would have required a process spanning at minimum thirty days. During that period, Plaintiff would have remained employed and earning income. The immediate revocation caused the loss of wages, benefits, and future earning capacity that compliant procedures would have delayed or prevented entirely, as well as future lost earnings and earning capacity for the remainder of his career.

b. **Dignitary and manner-of-termination damages.** Under Puerto Rico law, *daños morales* (moral damages) are compensable for the manner in which harm is inflicted, independent of the underlying outcome. Being stripped of credentials without warning, explanation, or opportunity for defense—in the presence of colleagues Plaintiff represented as union steward—is qualitatively and legally distinct from receiving written notice, understanding the reasons, and having a meaningful chance to respond, even if the ultimate result were the same. Plaintiff's diagnosed PTSD is attributable to the manner of the revocation, not merely the fact of job loss.

c. **Consequential damages from the denial of mandatory procedures.** Defendant's failure to follow mandatory credentialing procedures directly deprived Plaintiff of the ability to contest the revocation. Had Plaintiff been afforded a thirty-day response period, he would have presented Amentum's own internal investigation clearing him of any wrongdoing (Exhibit D, p. 2), the IAMAW's formal objections to the revocation, and any additional evidence supporting his position. DHS's failure to follow mandatory procedures extinguished Plaintiff's ability to invoke protections that could have changed the outcome. *Cf. King v. Higgins*, 702 F.2d 18 (1st Cir. 1983) (affirming compensatory damages where a subsequent proceeding conducted with proper procedural safeguards resulted

20

in a materially different outcome). Here, the disparity is even more pronounced: Amentum's properly conducted review cleared Plaintiff entirely.

42. Under Puerto Rico law, emotional distress damages—including mental anguish (*angustias y sufrimientos mentales*) and moral damages (*daños morales*)—are a recognized category of compensable harm under Article 1536 of the Civil Code, P.R. Laws Ann. tit. 31, § 10801, without any requirement of physical manifestation. The denial of mandatory procedural protections is itself a cognizable injury, and mental and emotional distress actually caused by such a denial is compensable as actual damages. *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

A. Award compensatory damages in the amount of $1,546,710.07, representing: (a) $896,710.07 in net lost earnings including lost wages and benefits, future lost earnings and earning capacity, offset by disability payments received; and (b) $500,000.00 in emotional distress, mental anguish, and moral damages arising from the diagnosed PTSD and the manner of the credential revocation; (c) $50,000.00 in loss of pension fund contributions and benefits, or such greater amount as determined at trial; and

(d) $100,000.00 in emotional distress and moral damages suffered by Plaintiff Vásquez;

B. Award costs of this action;

C. Award reasonable attorney's fees and litigation expenses; and

D. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, on this 14th of April 2026

**IT IS HEREBY CERTIFIED** that on this same date the foregoing was filed by uploading it to the CM/ECF system, which will send automatic notices to all attorneys of record.

s/ Adrian Brito Rodríguez
**ADRIAN BRITO RODRIGUEZ**
USDC/PR Bar No. 307304
Attorney for Plaintiff
1607 Ave. Ponce de León
St. GM6 #232
San Juan, PR 00909
Tel. (787) 568-8121
E-mail: adrian@brito.legal

22