

**International Association of Machinists and Aerospace Workers**

9000 Machinists Place
Upper Marlboro, Maryland 20772-2687

Area Code 301
967-4500



May 19, 2022

Subj: Unlawful and Retaliatory Revocation
of Facility Access to Union Shop Steward
Pedro Romero

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
*and via email to alejandro.mayorkas@dhs.gov, chris.magnus@cbp.dhs.gov*

Certified Mail #7020 1810 0001 5667 6950
The Honorable
Alejandro Mayorkas
Secretary of Homeland Security
Washington, DC 20528

Certified Mail #7020 1810 0001 5667 6967
Commissioner Chris Magnus
U.S. Customs and Border Protection
1300 Pennsylvania Ave. NW
Washington, DC 20229

Dear Mr. Secretary and Mr. Commissioner:

I am writing on behalf of the International Association of Machinists and Aerospace Workers (IAM) to bring to your attention what we view as a serious breach of established protocol, procedures, and federal law at the Caribbean Air and Marine Branch (CAMB) in Aguadilla, Puerto Rico.

We have already attempted to remedy the situation directly with Augusto "Ray" Reyes, the Director of CAMB at Rafael Hernandez Airport, but he has made it abundantly clear that he believes he can act with impunity to retaliate against Union shop stewards for performing their federally-protected duties to represent organized employees at the facility.

We therefore respectfully and urgently ask that you intervene to right the wrongs that have been committed, particularly with respect to terminating long-serving federal contractor employee Pedro Romero, and to remedy the chill on protected concerted activity under the National Labor Relations Act (NLRA) that has occurred as a result of Director Reyes' unlawful revocation of Mr. Romero's access credentials, resulting in his termination from employment.

pg. 2

Your intercession here will go a very long way to restore these employees' belief that they have a protected right to union representation, and will send a message that this Administration truly is in support of the hard working employees who support the mission of your agencies.

### *Brief summary of the facts.*

As we understand the situation, Amentum employee Kenneth Acevedo made allegations against all three Union shop stewards at CAMB in Aguadilla because the shop stewards were attempting to investigate misapplications of the parties' collective bargaining agreement (CBA). These misapplications of bargained-for contractual provisions included *underpayment* for work Mr. Acevedo was performing out of class. This investigation conducted by the shop stewards is something they are required to do under the terms of the CBA and the Union's obligations to the bargaining unit under the NLRA. These complaints by Mr. Acevedo apparently gave rise to Director Reyes' allegation that Mr. Romero posed some sort of "security concern" at the facility.

However, the Union's own internal investigation, as well as the investigation performed by Amentum, has resulted in absolutely no showing of any harassment or "security concerns." The investigations have shown that one employee—Mr. Acevedo—did not want Union representatives upholding the language of the CBA because he thought it would benefit him and ingratiate him with management.

As a result, CBP has intervened to retaliate against the IAM's Chief Shop Steward—directly resulting in a chill on *all* union representational behavior, as the other shop stewards are terrified they, too, will be targeted for unjust retaliation.

Notably, there was no call to any form of law enforcement in response to Mr. Romero's representational duties, and absolutely *zero* evidence of any actual "security concern." The complaining employee, Kenneth Acevedo, himself indicated that he was never afraid for his safety. And we are not aware of anything that might form a factual basis or even an individualized suspicion sufficient to warrant such actions being taken against Mr. Romero.

Despite having no sustainable basis, Director Reyes revoked facility access from Mr. Romero on March 9, 2022, claiming that Mr. Romero "posed a threat to the safety of [his] operations" because an employee "could have been physically harmed"—and despite his purported "security concerns," *specifically* instructed that Mr. Romero *not be removed until March 10* because of a "VIP visit at the CAMB" on March 9.

This makes the retaliation and unlawful targeting all the more clear — because if Mr. Romero were such a "security concern," Director Reyes would not have issued such an instruction to keep him on base an additional day. He would have contacted law enforcement, and he would have removed him immediately.

We have brought all of this to Director Reyes' attention, and asked him to reconsider his position. **See Attachment A.** He ignored us, and did not respond other than to acknowledge receipt.

pg. 3

The contractor employer, Amentum, also asked Director Reyes to reconsider "reinstating Pedro Romero's facility clearance," because

> Since that time, both the Union and Amentum's Labor Relations Manager George Taylor have conducted separate investigations and interviewed numerous employees. In total, nine Amentum employees were interviewed and none were a witness to any harassment or intimidation by Pedro Romero either during or since the initial claims. One of the interviewees was Kenneth himself who advised other than his initial claim, he has not been subject to any harassment or intimidation since then nor did he ever feel like he would sustain physical harm. Based on these interviews, Amentum could not substantiate any harassment or intimidation occurred as there were no witnesses and Amentum has no evidence that Pedro poses a threat to anyone's physical safety.

**See Attachment B.** Director Reyes refused to relent in his unlawful behavior, and Mr. Romero remains unemployed.

## *Legal and policy violations and subsequent impact on employees.*

This action to revoke Chief Steward Pedro Romero's access to CAMB, in direct and specific retaliation for his union responsibilities, would be a violation of the NLRA if performed by any private sector employer; arguably, Amentum's acquiescence to Director Reyes' behavior is also a violation of the NLRA.

It is also in direct violation to President Biden's White House Task Force on Worker Organizing and Empowerment Report, which clearly states that concerted union activity on federal installations must be protected as a priority.

Moreover, as outlined in Office of Personnel Management Memorandum addressing "Credentialing Standards Procedures for Issuing Personal Identity Verification Cards under HSPD-12 and New Requirement for Suspension or Revocation of Eligibility for Personal Identity Verification Credentials," Director Reyes had certain steps he did not take before suspending Mr. Romero's base access eligibility. **See Attachment C,** starting at p. 7.

Specifically, Director Reyes did not "refer credible adverse information" to *anyone*, such as local law enforcement or any other security or intelligence office," as no actual threat existed and therefore there was nothing to report. He did not fully investigate the situation, or place Mr. Romero on "a paid non-duty status" while "investigating," because he did not investigate anything and because he wanted to punish Mr. Romero. He did not "review all available information," which is a requirement unless "delays created by the review would increase risk" (which, as already mentioned, Director Reyes delayed removal of Mr. Romero for operational needs and thereby established himself that no risk was present). *Director Reyes did not even speak to Mr. Romero.* Director Reyes refused to follow established procedures in order to circumvent these necessary protections and retaliate against Mr. Romero.

Amentum has provided us with the results of its own internal investigation, where it determined that Mr. Romero did not engage in harassment of Mr. Acevedo, and that Mr. Acevedo was at no time afraid of Mr. Romero. Amentum interviewed *nine* witnesses, and found no evidence

pg. 4

of any wrongdoing by Mr. Romero. One employee being annoyed at the Union for upholding provisions of the CBA is not sufficient justification for the removal of Mr. Romero; frankly, I cannot imagine how anyone could reach the conclusion Director Reyes made here. Such a result is neither fair nor, we believe, consistent with the values and mission of CAMB, DHS, or CBP.

These actions have taken away Mr. Romero's livelihood, because he cannot do his job for Amentum without access to the facility. They have caused him immeasurable distress and anxiety as well.

They have also caused a chill in union activity at this work site, as the other shop stewards are now afraid they, too, will be targeted and find themselves unemployed if they ask questions to enforce provisions of the CBA. Director Reyes' actions have undermined the Union's ability to represent its members in a way that will take months, if not years, to overcome.

As a Union, the IAM supports the mission and the integrity of CAMB. We represent tens of thousands of service contract employees who work on military bases and in other protective services of the United States. Our members are proud of their work in our country's national defense.

We are not strangers to the discretion accorded to base commanders and other facility managers with respect to facility access. That discretion, however, is not without limits. The U.S. Supreme Court wrote, in 1961, that commanding officers on military bases cannot be "purely arbitrary" in making access decisions. *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886 (1961). The Court has not spoken to the standard for reviewing access decisions on non-military facilities, but it would surely not give a person such as Director Reyes more deference. And if we use the "purely arbitrary" standard, his decision with respect to Mr. Romero would not survive such scrutiny.

It was clearly arbitrary—and therefore unlawful—to remove Mr. Romero's access to the CAMB under these circumstances.

### *Conclusion.*

We therefore respectfully ask that you intercede and prevent this egregious violation of federal laws, policies, and norms to stand unaddressed.

The IAM has decided to take whatever steps are necessary to represent Mr. Romero and secure his return to employment. Should you be unable to assist us, we will not hesitate to pursue legal remedies through the Federal courts. We are actively considering Congressional action and oversight as well. However, we did not want to take any of these steps without first communicating with you.

pg. 5

I would be happy to discuss this matter with you, or, if you wish to refer this matter to agency counsel, with whomever that may be. I can be reached at the address above, by email at lewan@iamaw.org, or by telephone at (301) 967-4510.

Sincerely,

Laura Ewan
ASSOCIATE GENERAL COUNSEL

Cc:    Director Reyes, CAMB (via email)
Kristie Canegallo, Chief of Staff to Sec. Mayorkas (via US mail)
Tim Quinn, Executive Director, Intergovernmental Public Liaison (via US mail)
Stephen A. Boyer, Air and Marine Operations (via US mail)

GVP Wallace
COS Martin
GLR Almazán, Sr.
GLR Little
GLR Garcia